May 16, 2019

**Supreme Court**

No. 2018-32-Appeal.
No. 2018-248-Appeal.
(P 14-2875)

Terry Ann Smith        :

v.        :

Andrew Smith.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2018-32-Appeal.
No. 2018-248-Appeal.
(P 14-2875)

Terry Ann Smith                    :

v.                    :

Andrew Smith.                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The *pro se* defendant, Andrew Smith, appeals from decisions of the Family Court granting an absolute divorce to defendant and his former wife, Terry Ann Smith, the plaintiff, and ordering an equitable distribution of their marital assets.  This case came before the Supreme Court for oral argument on March 5, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After a close review of the record and careful consideration of the parties' written and oral arguments, we are satisfied that cause has not been shown and proceed to decide the appeal at this time.  For the reasons set forth herein, we affirm the decisions of the Family Court.

## Facts and Travel

This contentious litigation began on November 11, 2014, when plaintiff filed a complaint for divorce from defendant and the case was assigned to the Family Court general magistrate. The defendant, who was represented by counsel at the time, filed an answer and counterclaim for

divorce on December 23, 2014.[1] Both parties cited irreconcilable differences that led to the irremediable breakdown of the marriage as the grounds for divorce.

Soon thereafter, on January 16, 2015, the parties were heard on their motions for temporary allowances and, pursuant to a consent order, agreed, *inter alia*, to sell four parcels of real estate. However, defendant's obstructive and bad-faith interference with the efforts to sell the real estate led the general magistrate to appoint a commissioner to effectuate the transactions. Nevertheless, defendant—determined to prevent the sales—filed several disingenuous motions seeking to block the sales and remove the real estate commissioner; filed mechanic's liens on two parcels; and, most egregiously, purportedly conveyed one of the properties to a third party for the consideration of one cent.

The record also reflects that defendant deliberately sought to deceive the court, refused to comply with discovery requests, and engaged in vexatious litigation practices by filing a multitude of frivolous motions and appealing nearly every decision by the general magistrate.[2] The plaintiff appropriately sought sanctions pursuant to Rule 11 of the Family Court Rules of Procedure for Domestic Relations, claiming that defendant's motions were meritless and designed to harass and cause unnecessary delay, thereby needlessly increasing the costs of litigation. Given defendant's numerous pending appeals and frivolous motions, this case was ultimately reassigned to a justice of the Family Court.

On December 18, 2017, three years after the initial complaint was filed and after testimony spanning five months, the trial justice granted both parties an absolute divorce and

---

[1] On April 13, 2015, defendant's attorney withdrew as counsel; defendant proceeded *pro se*.

[2] The Family Court justice noted that, between April 2015 and June 2016, defendant filed fifty-three motions in this case, which she deemed "part of his stall tactics," given his concession in open court that he would "make sure that [p]laintiff * * * did not get a penny."

issued a ninety-five-page written decision. The trial justice made 113 findings of fact as to the procedural history of the case. Next, the trial justice reviewed the testimony and set forth the various assets and debts of the parties. After reviewing the parties' circumstances and conduct during the marriage, the trial justice then proceeded to an equitable distribution of the marital property in accordance with G.L. 1956 § 15-5-16.1. Notably, when addressing "either party's wasteful dissipation of assets[,]" the trial justice recounted defendant's "egregious behaviors in this case[,]" as well as his unwavering efforts to prevent the Family Court from granting a divorce, all while depleting the marital assets.

The trial justice addressed defendant's request for alimony, which, after examining the statutory factors set forth in § 15-5-16 and reincorporating her previous findings, she denied. The trial justice then considered plaintiff's complaint for protection from abuse. She found that defendant had placed plaintiff in fear of imminent physical harm, and, thus, granted the relief. Finally, the trial justice addressed plaintiff's request for Rule 11 sanctions against defendant and concluded that, given "[d]efendant's vexatious filing of baseless [m]otions" for the "sole purpose and intent to harass the [p]laintiff and dissipate the marital assets[,]" defendant had violated Rule 11, and, thus, ordered him to pay plaintiff's attorneys' fees.

Lastly, the trial justice made ninety-seven additional findings of fact. Notably, she found that, in light of defendant's willful depletion of marital assets and interference with plaintiff's efforts to preserve the value of the marital assets, it was equitable to award plaintiff a disproportionate amount of the marital assets. She awarded plaintiff 70 percent of various sums that defendant had withdrawn or withheld from the joint marital account. She further awarded plaintiff $30,394.81, which represented 70 percent of the "marital assets which were depleted from the marital estate solely due to [d]efendant's misdeeds[,]" as well as $82,550, which

- 3 -

represented plaintiff's 50 percent share of the value of the property that defendant had conveyed for the consideration of one cent. Upon granting the parties' prayers for divorce, the trial justice proceeded to divide the marital estate. From this decision, defendant appealed. Thereafter, on June 19, 2018, on remand from that appeal, the Family Court entered a decision pending entry of final judgment that memorialized the conclusions contained in the December 2017 decision. The defendant filed a timely notice of appeal from that decision, and we consolidated the appeals for briefing and argument.

**Analysis**

Before this Court, defendant contends that the Family Court did not have jurisdiction to grant plaintiff's complaint for divorce, as well as his counterclaim for divorce, because doing so would violate his religious right to the sacrament of marriage. This argument is without merit.

At the outset, we note that defendant makes this argument in the face of his own counterclaim seeking an absolute divorce from his union with plaintiff. It is undisputed that the Family Court possesses subject-matter jurisdiction to grant a petition for divorce. The General Assembly, by enacting G.L. 1956 § 8-10-3, specifically granted the Family Court the authority to "hear and determine all petitions for divorce from the bond of marriage[.]" *See* § 8-10-3(a); *see also Rogers v. Rogers*, 18 A.3d 491, 493 (R.I. 2011) (recognizing that the Family Court clearly has subject-matter jurisdiction with respect to petitions for divorce). Thus, contrary to defendant's assertions, the Family Court is vested with statutorily-conferred authority to oversee proceedings stemming from divorce actions, which includes the authority to grant an absolute divorce to the faithful among us whose religious beliefs repudiate divorce.[3] *See Ditson v. Ditson*,

---

[3] General Laws 1956 § 8-10-3(a) provides, in relevant part, that the Family Court has the power to "hear and determine all petitions for divorce from the bond of marriage[,] * * * all motions for allowance, alimony, support and custody of children, allowance of counsel and witness fees, and

- 4 -

4 R.I. 87, 105-06 (1856) (recognizing that marriage, as a contractual relationship, affects the parties' status, and that the state thereby has the sovereign authority to fix or alter the status of its citizens); *see also Crow v. Crow*, 41 R.I. 258, 259, 103 A. 739, 739 (1918) (holding that jurisdiction over divorce is statutory).

The defendant also argues that the Family Court justice erred in the equitable distribution of the parties' marital assets, pursuant to § 15-5-16.1. However, our review of the record convinces us that the Family Court justice did not abuse her discretion in disproportionately distributing the marital assets.

It is well established that "[t]he equitable distribution of marital assets is left to the sound discretion of the Family Court justice who is obligated to consider the factors prescribed by the Legislature in G.L. 1956 § 15-5-16.1." *Andreozzi v. Andreozzi*, 813 A.2d 78, 81 (R.I. 2003) (brackets omitted) (quoting *Viti v. Viti*, 773 A.2d 893, 895 (R.I. 2001)). In deciding the issue of equitable distribution, the Family Court justice considered the relevant statutory factors, including: (1) the length of the marriage; (2) the conduct of the parties during the marriage; (3) each party's contributions towards the acquisition, preservation, and appreciation of assets; (4) each party's homemaking contributions; (5) the health and age of the parties; (6) the amount and sources of income of the parties; (7) the occupation and employability of the parties; (8) each party's opportunity for future acquisition of capital assets and income; (9) the lack of dependent children; (10) defendant's wasteful dissipation of marital assets; and (11) defendant's bad-faith conduct. *See* § 15-5-16.1.

The record establishes that the trial justice issued a meticulous ninety-five-page written decision that sets forth the extensive travel of the case and includes findings on credibility and

---

other matters arising out of petitions and motions relative to real and personal property in aid thereof[.]"

- 5 -

the numerous issues raised in this three-year divorce proceeding. Her conclusions are memorialized in a fifteen-page decision pending entry of final judgment. When distributing the marital assets, the trial justice carefully considered the factors enumerated in § 15-5-16.1, taking into account the conduct of both parties, including defendant's misconduct and shocking dissipation of the parties' marital assets. We thus hold that the Family Court justice did not err, nor did she abuse her discretion in any way. Because the trial justice "scrupulously considered" all the requisite statutory elements and applied those factors to her well-supported findings of fact, we will not disturb her decisions. *See Tarro v. Tarro*, 485 A.2d 558, 560 (R.I. 1984).

Additionally, the defendant challenges the Family Court justice's imposition of Rule 11 sanctions, thereby requiring him to pay the plaintiff's reasonable attorneys' fees. Under Rule 11, trial courts have "broad authority to impose sanctions * * * for advancing claims without proper foundation[.]" *Michalopoulos v. C & D Restaurant, Inc.*, 847 A.2d 294, 300 (R.I. 2004). As such, "a trial justice has discretionary authority to formulate what he or she considers to be an appropriate sanction, but must do so in accordance with the articulated purpose of the rule: 'to deter repetition of the harm, and to remedy the harm caused.'" *Pleasant Management, LLC v. Carrasco*, 918 A.2d 213, 217 (R.I. 2007) (quoting *Michalopoulos*, 847 A.2d at 300). "[T]his Court will not reverse a trial justice's imposition of sanctions for a litigant's misconduct unless 'the trial court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Michalopoulos*, 847 A.2d at 300). Based on the record before us, which clearly establishes that the defendant acted in bad faith with the purpose and intent to harass the plaintiff and filed numerous frivolous motions that forced the plaintiff to incur additional legal fees, we see no abuse of discretion in imposing the sanction. If ever there was a case in which this sanction was warranted, the facts of this case cry out for such a remedy.

**Conclusion**

For the reasons set forth herein, we affirm the decisions of the Family Court.  The record shall be remanded to the Family Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Terry Ann Smith v. Andrew Smith. |
| **Case Number** | No. 2018-32-Appeal.<br>No. 2018-248-Appeal.<br>(P 14-2875) |
| **Date Opinion Filed** | May 16, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Patricia K. Asquith |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Jesse Nason, Esq. |
| | For Defendant:<br><br>Andrew Smith, Pro Se |